# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-3668

_____

David Kinserlow,                *
                            *

        Appellant,      *

                            *     Appeal from the United States

   v.                 *     District Court for the

                            *     Eastern District of Missouri -

CMI Corporation, Bid-Well Division, *     Eastern Division.

                            *

        Appellee.       *

_____

Submitted: May 12, 2000
Filed: July 5, 2000

_____

Before BOWMAN and LOKEN, Circuit Judges, and BATAILLON,[1] District Judge.

_____

BATAILLON, District Judge.

_____

   [1] The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, sitting by designation.

David Kinserlow appeals the district court's[2] grant of the motion for judgment as a matter of law made by CMI Corporation, Bid-Well Division, at the close of all the evidence in the trial of Kinserlow's personal injury claims. We affirm.

## I. BACKGROUND

Kinserlow, a cement mason working for Fred Weber, Inc. (FWI), brought this action for personal injuries against CMI Corporation, Bid-Well Division (Bid-Well), after he fell from a bridge over a highway in St. Louis County, Missouri. At the time he fell, Kinserlow was operating a bull float, walking backwards and forward on a mini workbridge behind a Bid-Well paving machine, smoothing out concrete. The workbridge had tapered end sections, but no written or painted warnings or guard rails to alert workers that they were coming to the end of the workbridge. Kinserlow, walking backwards, fell from the end of the workbridge to the ground 18' below. He was severely hurt, and his injuries still cause him debilitating pain. His suit against Bid-Well[3] alleged strict liability and negligence.[4]

The primary issue in the suit was the identity of the company that had manufactured the workbridge and then sold or supplied it to FWI. According to the testimony of Kinserlow's witnesses, Bid-Well and another company, Gomaco, both manufacture steel workbridges similar to the one from which Kinserlow fell. Kinserlow's workbridge had lost any identifying markings or labels it might have once

---

[2] The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri - Eastern Division.

[3] Kinserlow originally sued CMI/Bid-Well, Allied Construction Company, and Gomaco Corporation, but because of statute of limitations problems, he dismissed the action against all defendants except CMI/Bid-Well.

[4] Shirley Kinserlow's claim for loss of consortium was dismissed on summary judgment because she was not married to Kinserlow on the date of his accident.

had, having apparently been in FWI's inventory since before 1977. The primary evidentiary hurdle for Kinserlow was to establish that Bid-Well manufactured and then sold or supplied the workbridge to FWI. An FWI employee testified that at the time of Kinserlow's accident, FWI had two types of workbridges in inventory, one with filled-in metal triangles placed in the frame and another without filled-in metal triangles but with tapered end sections. Kinserlow's workbridge was one of the latter, and he alleged that Bid-Well had manufactured and sold or supplied it to FWI.

Two FWI employees testified that in their experience, once a concrete company purchased a workbridge and a paving machine, from whatever source, the two pieces of equipment are generally kept together as a set. Kinserlow himself testified that when he worked with a Bid-Well paving machine, he always used a workbridge identical to the one from which he fell. He also testified that when he worked for a different concrete company, he saw Bid-Well paving machines used with workbridges with tapered end sections like the one from which he fell. On the day of his accident, his workbridge was paired with a Bid-Well paving machine. The two pieces of equipment had been in FWI's inventory since at least 1977.

Kinserlow's witnesses offered no direct documentary evidence that Bid-Well had ever sold or supplied a workbridge to FWI prior to the date of the accident, and the FWI employee who would have been responsible for buying the workbridge is deceased. Kinserlow therefore attempted to establish through inference that Bid-Well had sold FWI the workbridge in question. For example, Thomas Held, the president of Allied Construction Company, Bid-Well's primary competitor in the steel workbridge market, testified during Kinserlow's case in chief that Allied Construction was the exclusive distributor of Gomaco paving machines and workbridges in the St. Louis area. Held testified that he could find but one invoice recording a sale of a Gomaco workbridge to FWI; that sale occurred in 1980 and did not involve the sale of a paving machine. He also testified that the Gomaco workbridges he was familiar with – those manufactured and sold after 1984, the year he began working for Allied Construction

– all had metal triangles inserted in their frames, unlike the workbridge from which Kinserlow fell.

On cross-examination, however, Held testified that he could not say whether Gomaco workbridges manufactured and sold before 1984 had such triangles. He also did not know what types of workbridges FWI had in inventory on the day of the accident, whether FWI had purchased a Gomaco workbridge from a source other than Allied Construction, or whether Bid-Well had ever sold workbridges with tapered end sections. Kinserlow and his other witnesses made similar admissions on cross-examination: they did not know whether Bid-Well had ever manufactured or sold a workbridge with tapered end sections, or whether Bid-Well had ever sold or supplied a workbridge to FWI prior to the accident.

In contrast, Bid-Well's witness Daniel Napierala, a long-time Gomaco employee, testified that since 1968 when it began building workbridges, Gomaco alone had been making workbridges with tapered end sections. Napierala said that he had never seen a tapered end section built by Bid-Well or by any other competitor in his seventeen years in the industry. He also testified that beginning in 1984, Gomaco began to put metal triangles on the frame of its workbridges so that warning labels could be attached to the workbridge. He further testified that as an exclusive Gomaco distributor, Allied Construction would have sold only new Gomaco equipment. FWI nevertheless could have acquired its inventory of Gomaco workbridges from a source other than Allied. Bid-Well's only other witness, Jack Lease, has been a Bid-Well employee since 1970. He was originally hired as a design draftsman, and is now Bid-Well's vice president and sales manager. He testified that Bid-Well began manufacturing and selling workbridges in 1975, but had never manufactured or sold workbridges with tapered end sections.

Kinserlow appeals the decision of the trial court to grant Bid-Well's motion, renewed at the close of evidence, for judgment as a matter of law under Federal Rule

of Civil Procedure 50(a). The trial court found that Kinserlow failed to establish by a preponderance that Bid-Well -- rather than some other manufacturer -- had manufactured, sold, or distributed the tapered end section of the workbridge from which Kinserlow fell. Kinserlow argues that the trial court's decision to grant judgment as a matter of law was incorrect because the court improperly weighed the facts presented by the plaintiff against the facts presented by the defendant. Kinserlow contends that the court should have given him the benefit of all beneficial inferences and not considered any of Bid-Well's evidence except as it might have helped his case.

## II.  DISCUSSION

In both Rule 56 motions for summary judgment and Rule 50 motions for judgment as a matter of law, the inquiry is the same: "[W]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 50(a) allows the judge in a jury trial to enter judgment against a party with respect to a claim or defense "that cannot under the controlling law be maintained or defeated without a favorable finding on that issue," when the party has been fully heard on the issue and "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on the issue." Fed. R. Civ. P. 50(a).

Our review of the district court's decision is de novo, using the same standards as the district court. *Stauch v. City of Columbia Hts.*, 2000WL 562424, at *2 (8th Cir. May 8, 2000). The court views the evidence "in the light most favorable to the [nonmoving] party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility." *Smith v. World Ins. Co.*, 38 F.3d 1456, 1460 (8th Cir. 1994) (*quoting White v. Pence*, 961 F.2d 776, 779 (8th Cir. 1992)). The court should grant judgment as a matter of law "only when all of the evidence points one way and is 'susceptible of no reasonable inference sustaining the position of the nonmoving party.'" *Id*.

5

In a recent age-based employment discrimination case in which an employer appealed the district court's decision to deny its motion for judgment as a matter of law, the United States Supreme Court clarified the standard of review dictated by Rule 50. *Reeves v. Sanderson Plumbing Prods., Inc.*, 2000 WL 743663 (U.S. June 12, 2000). The Court ruled that because the Fifth Circuit disregarded evidence supporting the employee's prima facie case and undermining the employer's nondiscriminatory explanation and also failed to draw all reasonable inferences in the employee's favor, it misapplied the Rule 50 standard of review. The Fifth Circuit had reversed the trial court on the ground that no rational trier of fact could find from the evidence that the employee had been fired because of his age, but the Court said that the circuit court "impermissibly substituted its judgment concerning the weight of the evidence for the jury's ." *Id*. at *12.

The Court stated that when entertaining a motion for judgment as a matter of law, a trial court "should review all of the evidence in the record." *Id*. at 10.

> In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. 'Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' Thus, although the court should review the records as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'

*Id*. at *11 (citations omitted).

Kinserlow argues that the evidence he presented at trial, if taken in the light most favorable to him, established by a preponderance that Bid-Well supplied the tapered-

end workbridge to FWI. He contends that had the trial court properly drawn all inferences in his favor and avoided weighing his evidence against Bid-Well's, the court would have submitted his case to the jury. Kinserlow argues that he was entitled to the inference that he was on a Bid-Well workbridge when he fell because Gomaco workbridges have metal triangles inserted in their frames; his did not. Moreover, he contends that a Bid-Well sales brochure that showed a Bid-Well paving machine paired with a Gomaco workbridge created an inference that Bid-Well would not have advertised an item in its brochure so substantially similar to the workbridge from which Kinserlow fell unless Bid-Well itself also manufactured or sold such a workbridge.

In a motion for judgment as a matter of law, the nonmoving party is only entitled to the benefit of reasonable inferences. *Fought v. Hayes Wheels Int'l, Inc.*, 101 F.3d 1275, 1277 (8th Cir. 1996). A "reasonable inference is one 'which may be drawn from the evidence without resort to speculation. When the record contains no proof beyond speculation to support the verdict, judgment as a matter of law is appropriate.'" *Id.* (citations omitted). The record is not clear whether the district court rejected as unreasonable the inferences urged on it by Kinserlow or allowed them as reasonable but found them unpersuasive on the issue of product identification. What is clear, however, is that the court evaluated all the evidence in the record in reaching its decision to grant Bid-Well's motion for judgment as a matter of law. The court stated that

> the burden is on the Plaintiff to prove by a preponderance of the evidence that – its case, and I have reached the conclusion in this case that he has not done so and that I will not submit the case to the Jury. I don't believe that there is a legally sufficient evidentiary basis for a reasonable jury to find for the party on the issue of product identification. And in a preponderance of the evidence case, it's – if it's equally divided between the parties, then the party that has the burden – in this case, the Plaintiff – I must rule against them. There's just not enough evidence, in the Court's view, to show that the Defendant CMI, the Bid-Well Division,

manufactured, sold, distributed, or placed in the stream of commerce the workbridge tapered end section.

Although the trial court mentions "equally divided" proof, suggesting a weighing of evidence, the court also indicates that Kinserlow failed to meet his burden of production. The evidence as outlined above does not support a reasonable inference that the only Gomaco workbridge in FWI's inventory was acquired in the single sale evidenced by the 1980 Allied Construction invoice. The evidence does not support an inference that Bid-Well paving machines are always paired with Bid-Well workbridges, or that FWI acquired the workbridge from which Kinserlow fell at the same time it acquired the Bid-Well paving machine with which it was paired. Nor does the evidence support an inference that because the workbridge from which Kinserlow fell lacked metal triangle inserts, it was therefore manufactured by Bid-Well. Kinserlow's witnesses could not establish that he fell from a Bid-Well workbridge because they could not testify that Bid-Well had ever manufactured or sold a workbridge with tapered end sections, or that Bid-Well had ever sold or supplied a workbridge to FWI prior to the accident. The trial court did not weigh Kinserlow's evidence against Bid-Well's or make credibility determinations. The trial court simply found that Kinserlow had not offered enough evidence to tie Bid-Well to the workbridge from which Kinserlow fell.

In reaching this conclusion, the court was entitled to give credence to any of Bid-Well's evidence that was "'uncontradicted and unimpeached, at least to the extent that that evidence [came] from disinterested witnesses.'" *Reeves v. Sanderson Plumbing Prods., Inc.,* at *11 (*quoting* 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529 at 300 (2d ed. 1995)). Kinserlow does not appear to have contradicted or impeached the testimony of Bid-Well's disinterested witness, Gomaco employee Daniel Napierala, that 1) only Gomaco had ever made workbridges with tapered end sections, and 2) Gomaco did not insert metal triangles into the frames of its workbridges until 1984. A strong inference to be drawn from this testimony is that the

workbridge from which Kinserlow fell was in fact not manufactured by Bid-Well but by Gomaco prior to 1984. This inference is consistent with the testimony of Kinserlow's own disinterested witness, Thomas Held of Allied Construction, that the Gomaco workbridges with which he was familiar – only those manufactured and sold after 1984, the year he began working for Allied Construction – all had metal triangle inserts. Finally, the inference is consistent with the testimony of Bid-Well's interested witness, Jack Lease, that Bid-Well had never sold or manufactured a tapered end workbridge during his nearly thirty year tenure with the company.

Having concluded that the trial court properly granted Bid-Well's motion for judgment as a matter of law, we do not address the other issue Kinserlow raises on appeal: whether the trial court abused its discretion by excluding on *Daubert* grounds the testimony of Kinserlow's product defect expert. Even assuming the testimony would have been admissible, its inclusion would not alter the result we reach today.

## III. CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

9